UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-154-GWU

SHARON K. DIAZ,                                                                        PLAINTIFF,

VS.                                    **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.

## INTRODUCTION

The plaintiff had previously filed Diaz v. Astrue, London Civil Action No. 06-468-GWU (E.D. Ky.) to appeal from the negative administrative decision on her application for Supplemental Security Income (SSI). After the undersigned's Memorandum Opinion, Order and Judgment of July 25, 2007 (Tr. 400-9), the case was returned to the agency for further consideration concerning restrictions issued by a consulting physician. (Tr. 408-9). After being consolidated with a subsequent SSI application, another negative administrative decision issued (Tr. 359-72) and the case is again before the undersigned on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th

1

08-154  Sharon K. Diaz

Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Crouch</u>, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a <u>de minimis</u> hurdle in the disability determination process.  <u>Murphy v. Secretary of Health and Human Services</u>, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." <u>Farris v. Secretary of Health and Human Services</u>, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  <u>Id</u>., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.  <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under

08-154  Sharon K. Diaz

certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ."

08-154  Sharon K. Diaz

Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

On remand, the plaintiff submitted additional medical evidence and testified at a supplemental administrative hearing.  She continued to describe her problems as including back pain which radiated down her legs, particularly on the left (Tr. 646, 654), insulin-dependent diabetes mellitus with numbness and tingling in her hands (Tr. 645, 651-3), and depression, for which she was receiving medications and counseling (Tr. 656-60).

The specific reason for the remand was to question the Vocational Expert (VE) regarding the potential vocational impact of specific restrictions listed by a

consultative physical examiner, Dr. Monte Edward Martin (Tr. 296). On remand, the VE was asked whether a person of the plaintiff's age of 49, eighth grade education, and lack of work experience could perform any jobs if she were limited to "light" level exertion, with the ability to sit four hours with rests, stand three hours with rests, and walk two hours with rests, and also had the following non-exertional restrictions. She: (1) could not crawl or climb ladders, ropes, or scaffolds; (2) could not drive or be exposed to hazardous materials; (3) would have a "seriously limited but not precluded" ability to understand, remember, and carry out complex instructions, behave in an emotionally stable manner, and relate predictably in social situations; and (4) had a "limited but satisfactory" ability to understand, remember, and carry out detailed instructions, demonstrate reliability, follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stress, function independently, and maintain attention and concentration. (Tr. 662-7). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 666).

The plaintiff does not challenge the mental restrictions, which are supported in a report from Psychiatrist Sayed Raza. (Tr. 779-83). Dr. Raza was the plaintiff's treating psychiatrist at the Cumberland River Comprehensive Care Center and had assigned a Global Assessment of Functioning (GAF) score of 65 in September,

2005, 60 in September and December, 2006, and 55 in October, 2007 (Tr. 534, 553, 570). GAF scores in this range reflect mild to moderate limitations. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. Accordingly, this portion of the decision is supported by substantial evidence.

As previously noted, the physical restrictions include specific limitations given by Dr. Martin, a consultative examiner. A subsequent consultative examiner, Dr. Mark Burns, found no physical or orthopedic abnormalities. (Tr. 784). No source at the plaintiff's treating family physicians at the Clover Fork Clinic suggested any limitations.

The plaintiff argues, however, that the plaintiff's statements regarding limited ability to use her hands due to diabetes and numbness were improperly rejected by the ALJ, who also failed to make his reasoning known. Social Security Ruling 96-7p provides that an ALJ's credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See also Rogers v. Commissioner of Social Security, 486 F.3d 234 (6th Cir. 2007). In the present case, the ALJ noted that the evidence did not document any serious complications from the plaintiff's insulin-dependent diabetes. He noted that despite her sporadic complaints of numbness in her extremities, "her physicians have not considered her complaints sufficient to justify testing." (Tr. 370). Carpal tunnel

syndrome had been ruled out and the plaintiff admitted that she had been non-compliant with her insulin and did not wish to stop smoking. (Id.). Therefore, it is clear enough that the ALJ was declining to find the plaintiff's complaints of hand numbness fully credible due to: (1) lack of objective evidence, and (2) failure to follow prescribed treatment. Consequently, there is no procedural error by the ALJ in failing to describe his rationale.

As for the merits of questioning the plaintiff's credibility, the court notes that the plaintiff did complain of hand numbness on several occasions, though by no means was this mentioned at all of her office visits. When she described the problem in May, 2005, she was out of her diabetes medication and it was noted that her uncontrolled diabetes might be causing some trouble with her hands. Her dosage of insulin was increased and a new medication was added. (Tr. 425-6, 587). In August, 2005, her insulin was increased again, and it was noted that the cause of the numbness was uncertain. (Tr. 423, 589). Two further complaints of numbness were accompanied by the plaintiff's admissions that she was not keeping to her diet. (Tr. 592, 601). In the most recent office notes from her family practitioner's clinic, the plaintiff denied having any paresthesias. (Tr. 603). Neither of the consultative physical examiners, Dr. Martin and Dr. Burns, found any abnormalities of the hands. (Tr. 294, 785-8). At best, the evidence suggests that complaints of hand numbness were intermittent, and connected with lack of

08-154 Sharon K. Diaz

compliance by the plaintiff. Under the circumstances, the ALJ could reasonably have found the plaintiff's subjective complaints to be less than credible.[1]

The decision will be affirmed.

This the 29th day of April, 2009.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**

---

[1] The only physicians who placed limitations on fingering were state agency non-examining physicians who reviewed a portion of the evidence. (Tr. 490-6, 499-506). Although he was not explicit, the ALJ could have declined to accept this restriction for the same reasons he gave for discounting the plaintiff's subjective complaints. Technically, the ALJ is not required to provide the same detailed explanation for rejecting a non-examining source as he is required to give for an examiner. Smith v. Commissioner of Social Security, 482 F.3d 873, 876 (6th Cir. 2007).